AO 91 (Rev. 01/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Dayne Christian,<br><br>_Defendant_ | ) ) ) ) ) Case No. 09-6518-BSS |

FILED by _____ D.C.
DEC 18 2009
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. FLA. – FT. LAUD.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of __see below__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant violated __18__ U. S. C. § __922(a)(6)__, an offense described as follows:

On or about August 15, 2009 and December 12, 2009, the defendant, in connection with the acquisition of a firearm from a licensed dealer, did knowingly make a false and fictitious written statement to the dealer, which statement was intended and likely to deceive the dealer with respect to any fact material to the lawfulness of the sale and disposition of such firearms, in that the defendant stated in Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473 that he was the actual buyer of the firearms, when in truth and fact, and as the defendant then and there well knew, he was purchasing the firearms for another person, in violation of Title 18, United States Code, Section 922(a)(6).

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_Complainant's signature_

Timothy D. Trenschel, Special Agent, ATF
_Printed name and title_

Sworn to before me and signed in my presence.

Date: _12/18/2009_

_Judge's signature_

City and state: _Ft. Lauderdale, Florida_      Barry S. Seltzer, United States Magistrate Judge
_Printed name and title_

## AFFIDAVIT

I, Timothy D. Trenschel, being first duly sworn, hereby depose and say:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), and have been so employed for approximately 5 years. I am currently assigned to the West Palm Beach Field Office. Previously, I was employed as a metropolitan police officer for the Lexington Fayette Urban County Division of Police in Lexington, Kentucky for 5 years. I have received specialized training regarding the investigation and enforcement of federal firearms violations and have conducted investigations regarding individuals involved in illegal firearms activities, including making false statements in connection with the acquisition of a firearm.

2. This affidavit is being submitted in support of a criminal complaint against Dayne CHRISTIAN. As set forth in detail below, I respectfully submit there is probable cause to believe that CHRISTIAN, in connection with the acquisition of a firearm from a licensed dealer, knowingly made a false and fictitious written statement to the dealer, which statement was intended and likely to deceive the dealer with respect to any fact material to the lawfulness of the sale and disposition of such firearms, in violation of Title 18, United States Code, Section 922(a)(6).

3. This affidavit is based on my personal knowledge, as well as information received from other law enforcement officers. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint, it does not contain everything I know about this investigation.

4. On September 4, 2009, in Palm Beach County, in the Southern District of Florida, I took custody of a UPS package that was purportedly being sent from "Thomas Ugalde," at an

1

address in West Palm Beach, to "Peggy Hall," at an address in the United States Virgin Islands. The address listed for "Thomas Ugalde," was one of CHRISTIAN's former addresses, and law enforcement officers have not been able to locate or identify the listed address in the United States Virgin Islands.

5. The package had been searched by UPS employees, per their private courier policy, because the size, weight, and weight distribution did not seem to match the declared contents ("2 auto parts"). Inside the package, UPS employees found two smaller boxes, which contained hundreds of rounds of ammunition and 13 magazines. Each of the enclosed boxes had UPS Tracking numbers, and one was addressed to CHRISTIAN. The second box was sent from Phoenix Distributors, a federal firearms licensee ("FFL") in Pennsylvania, to PAR Firearms & Supplies ("PAR"), a FFL in West Palm Beach, Florida.

6. On September 9, 2009, I interviewed a UPS employee concerning this shipment. The UPS employee identified CHRISTIAN as the individual who presented the package for shipment from a six-person photo lineup.[1]

7. Based upon my training and experience, I know that a person cannot order firearms for delivery through the mail. Prior to purchasing a firearm from an FFL, the purchaser must complete an ATF Form 4473, Firearms Transaction Record to confirm that he or she is eligible to own a firearm. One of the questions contained on the Form 4473 reads:

> Are you the actual buyer of the firearm(s) listed on this form? Warning: You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual buyer, the dealer cannot transfer the firearm(s) to you.

---

[1] A UPS manager who assisted with the transaction was not able to identify CHRISTIAN from the photo lineup.

2

Accordingly, if a person wants to purchase a firearm from outside his immediate area, he must arrange to have the firearm transferred from the distant FFL to a local FFL. Then the buyer must travel to the local FFL, fill out the ATF Form 4473, and take delivery of the firearm at the local FFL.

8. On September 17, 2009, along with another law enforcement officer, I interviewed the proprietors of PAR concerning the shipment from Phoenix Distributors and CHRISTIAN. One of the proprietors advised that he does not purchase from Phoenix Distributors. He explained that PAR would receive a shipment from Phoenix Distributors only in connection with the transfer of possession of a firearm, such as when a firearm was purchased via the Internet from another FFL. He added that he specifically recalled CHRISTIAN as a frequent customer who picked up firearms purchased from other FFLs over the Internet.

9. During the interview, PAR's proprietor provided me with photocopies of 4 separate ATF Form 4473s, which were completed by CHRISTIAN, and which recorded the acquisition of 5 firearms by CHRISTIAN on May 18, 2009, May 30, 2009, June 16, 2009, and August 8, 2009. On each form, CHRISTIAN stated that he was the actual buyer of the firearms. These firearms had been purchased at other FFLs and shipped to PAR for pick up by CHRISTIAN.

10. On September 28, 2009, I interviewed an employee at Gator Guns & Pawn, a FFL in West Palm Beach, concerning CHRISTIAN. The employee said that, on August 15, 2009, CHRISTIAN took possession of two firearms, which he had paid for on a prior day. In connection with these purchases, CHRISTIAN again completed ATF Form 4473 stating that he was the actual buyer of the firearms.

3

11. On October 4, 2009, a PAR employee telephoned me, and informed me that CHRISTIAN had just purchased a firearm, which had transferred through PAR from another FFL following an internet purchase. During the purchase from PAR, CHRISTIAN provided (340) 998-2919 as his telephone number. In connection with this purchase, CHRISTIAN again completed an ATF Form 4473 stating that he was the actual buyer of the firearm.

12. On December 2, 2009, a PAR employee received a telephone call from a male subject inquiring if two guns had arrived for CHRISTIAN. The name on the Caller ID was Leon SWAN and the telephone number was (340) 998-2919. In a later telephone interview, the PAR employee told me that every time PAR received a gun for CHRISTIAN, somebody other than CHRISTIAN called to check on the arrival of the firearm.

13. According to law enforcement records, SWAN arrived at Fort Lauderdale International Airport on December 6, 2009 from the United States Virgin Islands. I received information from the U.S. Air Force, Office of Special Investigations, that SWAN was convicted on several charges, equivalent to felonies, under the Uniform Code of Military Justice (UCMJ) and had been sentenced to 13 months of confinement. Based upon my training and experience, and the training and experience of other law enforcement officers, I know that a military conviction by court martial is a "conviction in any court" as used in Title 18, United States Code, Sections 922(d)(1) and 922(g)(1). *See United States v. Martinez*, 122 F.3d 421, 424 (7th Cir. 1997); *United States v. MacDonald*, 992 F.2d 967, 970 (9th Cir. 1993); *United States v. Gayle*, 342 F.3d 89, 92 (2d Cir. 2003). Thus SWAN is prohibited by federal law from possessing any firearms or ammunition.

14. On December 8, 2009, the owner of PAR called me and told me that CHRISTIAN was picking up firearms with two other people. I immediately went to PAR and saw

4

CHRISTIAN with two other individuals, one of whom I recognized as SWAN. The other individual was later identified as Dwayne ADAMS. While at PAR, CHRISTIAN completed the purchase of three firearms. In connection with this firearm acquisition, CHRISTIAN again completed an ATF Form 4473, stating that he was the actual purchaser of the firearm.

15. The three firearms CHRISTIAN picked up on December 8, 2009 were purchased through www.gunbroker.com, an internet site that facilitates the on-line purchase of firearms. Law enforcement officers learned that all three firearms had been purchased by someone using the name "Copper Shot." The contact information for "Copper Shot" lists CHRISTIAN as a user of the account, with an e-mail address of dchrist223@gmail.com, a home address in West Palm Beach, Florida, and a contact telephone number of (340) 998-2919, which is SWAN's telephone number. Additional records from gunbroker.com indicate that the following three e-mail addresses are listed as the "Real Email Address" associated with the "Copper Shot" username: leon.swan@langley.af.mil, leonswan45@yahoo.com and leon.swan@mountainhome.af.mil.

16. One of the firearms picked up on December 8, 2009 was purchased from L&A Firearms, a FFL in Tennessee. L&A received a money order, purportedly from CHRISTIAN, to complete the purchase of the firearm. Law enforcement officers traced the origin of the money order to the United States Virgin Islands, and discovered, based on a review of video surveillance from a post office in the United States Virgin Islands, that SWAN actually purchased the money order. In addition, SWAN purchased two additional money orders and three pre-stamped envelopes.

17. On December 12, 2009, CHRISTIAN, accompanied by SWAN and ADAMS, completed the purchase of a firearm from Gator Gun & Pawn. This gun had been held on "lay

5

away" for CHRISTIAN for several months. In connection with this purchase, CHRISTIAN again completed an ATF Form 4473.

18. In connection with each firearm purchase and acquisition described in the above paragraphs, CHRISTIAN answered "yes" to question 11.a of each ATF form 4473, which provides: "Are you the actual buyer of the firearm(s) listed on this form? **Warning: You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual buyer, the dealer cannot transfer the firearm(s) to you.**" Further, CHRISTIAN signed beneath the following statement: "I certify that the answers to Section A are true and correct. I am aware that ATF Form 4473 contains Important Notices, Instructions and Definitions. I understand that answering 'yes' to question 11.a if I am not the actual buyer of the firearm is a crime punishable as a felony....I also understand that making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony."

19. On December 14, 2009, SWAN delivered two stand-up arcade-style video games to a shipping company warehouse in Medley, Florida, for shipment to the United States Virgin Islands. According to the shipper's letter of instruction, SWAN identified himself as the shipper, with an address in Miami, Florida, and a contact telephone number of (340) 998-2919. SWAN also identified himself as the consignee, with an address in the Virgin Islands, and provided a contact telephone number of (340) 998-2919.

20. On December 14, 2009, SWAN and ADAMS boarded a plane to the United States Virgin Islands from Ft. Lauderdale International Airport. Their bags were searched by law enforcement officers. Inside ADAMS's bag were a holster, owner's manual, and box for firearms previously purchased by CHRISTIAN. Inside SWAN's bag, law enforcement officers

found a gun cleaning kit, receipt for the purchase of ammunition, and a "lay away tag" in the name of CHRISTIAN.

21. On December 16, 2009, SWAN's video game consoles arrived at the Port of Palm Beach prior to their final delivery to the United States Virgin Islands. Upon arrival, the cargo container containing the video game consoles was delivered to the Customs and Border Protection ("CBP") x-ray line. The x-ray scan revealed an anomaly within the video game consoles. Additionally, a CBP weapons and currency K-9 displayed a positive alert near the two video game consoles.

22. Following the x-ray and K-9 alert, the video game consoles were taken to a CBP warehouse for inspection. CBP officers removed the rear panel of one of the video game consoles and found numerous firearms, rounds of ammunition, and magazines. CBP then opened the second video game console and found additional firearms, ammunition, and magazines. In total, inside the video game consoles, CBP found 21 firearms, about 1600 rounds of ammunition, and numerous magazines.

23. The vast majority of the firearms recovered from the video game consoles were the same make and model firearms purchased by CHRISTIAN on May 18, 2009, May 30, 2009, June 16, 2009, August 8, 2009, August 15, 2009, September 28, 2009, October 4, 2009, December 8, 2009, and December 12, 2009, as described above. The serial numbers for all but one of the firearms had been obliterated. The one firearm with an intact serial number was purchased by CHRISTIAN. Additionally, one of the firearms with an obliterated serial number was found inside a box with the serial number of the firearm on the box and a layaway tag affixed to the side of the box with CHRISTIAN's name. That firearm was purchased by CHRISTIAN on August 15, 2009.

7

24.  For the above reasons, I respectfully submit there is probable cause to believe that CHRISTIAN, in connection with the acquisition of a firearm from a licensed dealer, knowingly made a false and fictitious written statement to the dealer, which statement was intended and likely to deceive the dealer with respect to any fact material to the lawfulness of the sale and disposition of such firearms, that is, CHRISTIAN stated that he was the actual buyer of the firearms in these transactions when in truth and in fact, CHRISTIAN was serving as a "straw purchaser" for SWAN; in violation of Title 18, United States Code, Section 922(a)(6).

Timothy D. Trenschel
Special Agent, ATF

Sworn and subscribed before me
this 18th day of December, 2009.

Honorable Barry S. Seltzer
United States Magistrate Judge

8